Slip Op. 20-133

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**JEM D INTERNATIONAL (MICHIGAN) INC. USA, JEM D MARKETING (VIRGINIA) INC., RED SUN FARMS HOLDINGS USA LLC, AND RED SUN FARMS VIRGINIA LLC,**

      **Plaintiffs,**

**v.**

**UNITED STATES,**

      **Defendant,**

**and**

**THE FLORIDA TOMATO EXCHANGE,**

      **Defendant-Intervenor.**

</td><td>

**Before: Jennifer Choe-Groves, Judge**

**Court No. 19-00127**

</td></tr>
</table>

## OPINION AND ORDER

[Granting Defendant's motion to dismiss.]

Dated:  September 11, 2020

Valerie Ellis and Kimberly Reynolds, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for Plaintiffs Jem D International (Michigan) Inc. USA, Jem D Marketing (Virginia) Inc., Red Sun Farms Holdings USA LLC, and Red Sun Farms Virginia LLC.

Elizabeth Anne Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel on the brief was Emma T. Hunter, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, D.C.

Jonathan M. Zielinski, Robert C. Cassidy, Jr., Charles S. Levy, James R. Cannon, Jr., Mary Jane Alves, and James E. Ransdell, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor The Florida Tomato Exchange.

Choe-Groves, Judge:  Plaintiffs Jem D International (Michigan) Inc. USA, Jem D

Marketing (Virginia) Inc., Red Sun Farms Holdings USA LLC, and Red Sun Farms Virginia

LLC ("Plaintiffs")[1] brought suit under this Court's residual jurisdiction, 28 U.S.C. § 1581(i),

challenging Commerce's decision to withdraw from a previously entered suspension agreement,

continue the underlying antidumping investigation, and commence negotiations upon signing a

new agreement suspending Commerce's antidumping duty investigation of fresh tomatoes from

Mexico.  Suppl. Compl. ¶ 1, ECF No. 52 ("Compl."); Fresh Tomatoes from Mexico, 84 Fed.

Reg. 20,858 (Dep't Commerce May 13, 2019) (termination of suspension agreement, rescission

of administrative review, and continuation of the antidumping duty investigation) ("May 2019

Withdrawal Notice").  Plaintiffs request that the court "hold unlawful and set aside Commerce's

termination of the 2013 Suspension Agreement" and also "hold unlawful Commerce's

resumption of the antidumping duty investigation" based on using May 7, 2019 as the date of the

preliminary determination.  Compl. ¶ 4.[2]

Before the court is Defendant United States' ("Defendant") motion to dismiss the

Complaint pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant

---

[1] In a separate action challenging certain aspects of the final determination made in the underlying antidumping duty investigation that is the subject of this action, Plaintiff Red Sun Farms claims to encompass the following entities: (1) Naturbell SPR DE RL, (2) San Miguel Red Sun Farms SPR DE RL DE CV, (3) Agricola El Rosal SA DE, (4) Jem D International Michigan Inc., and (5) Red Sun Farms Virginia LLC.  Red Sun Farms v. United States, Court No. 19-00205, Compl. ¶ 1, ECF No. 8.  Red Sun Farms also alleges it is "a producer and exporter of fresh tomatoes from Mexico, an importer of fresh tomatoes from Mexico, and a domestic producer of fresh tomatoes in the United States."  Id., Compl. ¶ 3.

[2] References to the "2013 Suspension Agreement" and "2019 Suspension Agreement" are to the agreements published in these Federal Register notices: (1) Fresh Tomatoes from Mexico, 78 Fed. Reg. 14,967 (Dep't Commerce Mar. 8, 2013) (suspension of antidumping investigation) ("2013 Suspension Agreement"); and (2) Fresh Tomatoes from Mexico, 84 Fed. Reg. 49,987 (Dep't Commerce Sept. 24, 2019) (suspension of antidumping investigation) ("2019 Suspension Agreement").

to USCIT Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Def.'s Mot.

to Dismiss, ECF No. 53 ("Def. Br.").  Plaintiffs opposed.  Pls.' Resp. to Def.'s Mot. to Dismiss,

ECF No. 57 ("Opp'n Br.").  Defendant replied.  Def.'s Reply in Supp. of its Mot. to Dismiss,

ECF No. 58 ("Def. Reply").[3]  For the reasons that follow, Defendant's motion to dismiss is

granted.[4]

## I.    BACKGROUND[5]

### A.  History of the Fresh Tomatoes from Mexico Antidumping Duty Proceeding

Commerce's investigation of fresh tomatoes from Mexico has a long procedural history.

In April 1996, Commerce initiated an antidumping duty investigation to determine whether

imports of fresh tomatoes from Mexico were being, or likely to be, sold in the United States at

less than fair value.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't Commerce Apr.

25, 1996) (initiation of antidumping duty investigation).  After a preliminary determination from

the International Trade Commission ("ITC") in October 1996, Commerce made a preliminary

determination that imports of fresh tomatoes from Mexico were being sold in the United States at

less than fair value.  Compl. ¶ 8; Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,608 (Dep't

---

[3] Defendant-Intervenor The Florida Tomato Exchange "support[s] the entirety of the United States' motion and agree[s] with the arguments presented therein."  Def.-Intervenor's Resp. 1, ECF No. 56.

[4] Plaintiffs moved for leave to file a sur-reply to address assertions made in Defendant's reply in support of the motion to dismiss.  Pls.' Mot. for Leave to File Sur-Reply in Opp'n to Mot. to Dismiss, ECF No. 59.  The court grants Plaintiffs' motion and deems the sur-reply filed.  See Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) ("District courts . . . are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them." (citations omitted)).

[5] Apart from the allegations contained in a complaint, the court may also consider documents "incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

Commerce Nov. 1, 1996) (preliminary determination) (announcing the suspension of liquidation

and directing U.S. Customs and Border Protection ("CBP") to require a cash deposit or posting

of a bond) ("1996 Preliminary Determination").  Commerce also announced that, under U.S.C.

§ 1673d(a)(2)(A), based upon receiving requests from five of the six mandatory respondents,

Commerce postponed making its "final determination until the 135th day after the date of

publication of the affirmative preliminary determination in the Federal Register[,]" which was

March 16, 1997.  1996 Preliminary Determination, 61 Fed. Reg. at 56,609.

      That same day, Commerce announced that Commerce and certain producers and

exporters who accounted for substantially all of the imports of fresh tomatoes from Mexico into

signed an agreement to suspend the antidumping duty investigation on fresh tomatoes from

Mexico (the 1996 Suspension Agreement).  Compl. ¶ 9; Fresh Tomatoes from Mexico, 61 Fed.

Reg. 56,618 (Dep't Commerce Nov. 1, 1996) (suspension of antidumping investigation).[6]

      Over the next 23 years, Commerce and the signatories entered into a series of suspension

agreements after the signatory Mexican producers and exporters of fresh tomatoes gave notice

that they wanted to withdraw from the operative suspension agreement.  The Mexican signatories

announced their intent to withdraw from the relevant suspension agreement three times: in 2002,

2007, and 2013.  Compl. ¶ 10.[7]

---

[6] The term "signatory" or "signatories" appearing throughout the various suspension agreements refers to the "signatory producers/exporters of fresh tomatoes from Mexico."  2019 Suspension Agreement, 84 Fed. Reg. at 49,989; 2013 Suspension Agreement, 78 Fed. Reg. at 14,968; Fresh Tomatoes from Mexico, 61 Fed. Reg. at 56,619.

[7] See Fresh Tomatoes from Mexico, 67 Fed. Reg. 50,858, 50,858–59 (Dep't Commerce Aug. 6, 2002) (termination of suspension agreement, termination of sunset review, and resumption of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed. Reg. 2887, 2887–88 (Dep't Commerce Jan. 16, 2008) (termination of suspension agreement, termination of sunset review, and resumption of antidumping investigation); Fresh Tomatoes from Mexico, 78 Fed. Reg.

Each time the Mexican signatories announced their withdrawal from the effective suspension agreement, Commerce terminated the suspension agreement, resumed the antidumping investigation, suspended liquidation, and instructed CBP to require a cash deposit or bond at the rate set forth in the 1996 Preliminary Determination.  See Compl. ¶ 11; Fresh Tomatoes from Mexico, 67 Fed. Reg. at 50,860; Fresh Tomatoes from Mexico, 73 Fed. Reg. at 2889; Fresh Tomatoes from Mexico, 78 Fed. Reg. at 14,772.  Yet, each time the Mexican signatories withdrew, the parties negotiated and entered into a new suspension agreement, and in 2002, 2008, and 2013, new suspension agreements went into effect.  Compl. ¶ 12.[8]  In those instances, Commerce directed CBP to refund cash deposits collected during the resumption period of the antidumping duty investigation and to release any bonds that were posted.  See Def. Br., Exs. 1–3 (CBP Messages).  And in each instance, Commerce resumed the antidumping duty investigation in 2002, 2008, and 2013 "as if" Commerce had published the 1996 Preliminary Determination on the effective date of termination.  Fresh Tomatoes from Mexico, 67 Fed. Reg. at 50,859–60; Fresh Tomatoes from Mexico, 73 Fed. Reg. at 2889; Fresh Tomatoes from Mexico, 78 Fed. Reg. at 14,772.[9]

---

14,771, 14,771 (Dep't Commerce Mar. 7, 2013) (termination of suspension agreement, termination of sunset review, and resumption of antidumping investigation).

[8] Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed. Reg. 4831 (Dep't Commerce Jan. 28, 2008) (suspension of antidumping investigation); 2013 Suspension Agreement, 78 Fed. Reg. at 14,967–68.

[9] Commerce indicated each time that the final determination stemming from the continued investigation would be issued within 135 days.  Fresh Tomatoes from Mexico, 67 Fed. Reg. at 50,859–60; Fresh Tomatoes from Mexico, 73 Fed. Reg. at 2889; 2013 Suspension Agreement, 78 Fed. Reg. at 14,772.

### B.  Commerce Withdraws from the 2013 Suspension Agreement, Continues the Underlying Investigation, and Issues the Final Determination

Section VI.B of the 2013 Suspension Agreement allowed either party (Commerce or the Mexican signatories) to withdraw from that agreement upon giving 90 days' written notice. Commerce gave the signatory Mexican tomato growers and exporters notice of intent to withdraw from the 2013 Suspension Agreement on February 6, 2019.  Compl. ¶¶ 28–29; May 2019 Withdrawal Notice, 84 Fed. Reg. at 20,860 (explaining the history of the proceedings); Fresh Tomatoes from Mexico, 84 Fed. Reg. 7872, 7874 (Dep't Commerce Mar. 5, 2019) (notice of intent to terminate suspension agreement, rescind the sunset and administrative reviews, and resume the antidumping duty investigation).  Commerce then withdrew from the 2013 Suspension Agreement, effective May 7, 2019, and continued the underlying antidumping investigation.  Compl. ¶¶ 31–32; May 2019 Withdrawal Notice, 84 Fed. Reg. at 20,858.

On September 24, 2019, Commerce published a notice in the Federal Register, with an effective date of September 19, 2019, announcing that "Commerce and representatives of the signatory producers/exporters accounting for substantially all imports of fresh tomatoes from Mexico signed" an agreement to suspend the underlying antidumping duty investigation.  2019 Suspension Agreement, 84 Fed. Reg. at 49,989; Compl. ¶ 39.  One of the Mexican signatories to the 2019 Suspension Agreement is the Asociación Mexicana de Horticultura Protegida, A.C. ("AMHPAC").  2019 Suspension Agreement, 84 Fed. Reg. at 49,994.  AMHPAC and the other associations of individual Mexican fresh tomato growers who signed the 2019 Suspension Agreement "certif[ied] that the members of their organization agree to abide by all terms of the Agreement."  Id.  Three members of Plaintiff Red Sun Farms consortium of companies, Naturbell SPR DE RL, San Miguel Red Sun Farms SPR DE RL DE CV, and Agricola El Rosal DE, are members of AMHPAC.  See Confederacion de Asociaciones Agricolas del Estado de

<u>Sinaloa, A.C. v. United States</u>, Court No. 19-00203 ("<u>CAADES</u>"), Compl. n.1, ECF No. 14; <u>id.</u>,

Ex. 1, ECF No. 14-1 (identifying the individual members and associations as signatories to the

2019 Suspension Agreement).[10]   No party challenged Commerce's decision to suspend the

investigation.   The ITC also announced the suspension of its antidumping investigation as of

September 24, 2019.   <u>Fresh Tomatoes from Mexico</u>, 84 Fed. Reg. 54,639 (Int'l Trade Comm'n

Oct. 10, 2019) (suspension of anti-dumping investigation).

     After signing the 2019 Suspension Agreement, Commerce received requests under 19

U.S.C. § 1673c(g) to continue the underlying antidumping duty investigation.   <u>Fresh Tomatoes</u>

<u>from Mexico</u>, 84 Fed. Reg. at 57,401.   Commerce published its final determination in the

continued investigation, finding that fresh tomatoes from Mexico were being, or likely to be,

sold in the United States at less than fair value on October 25, 2019.   <u>Fresh Tomatoes from</u>

<u>Mexico</u>, 84 Fed. Reg. at 57,401.   The ITC issued an affirmative injury determination on

December 12, 2019.   Compl. ¶ 40; <u>Fresh Tomatoes from Mexico</u>, 84 Fed. Reg. 67,958 (Int'l

Trade Comm'n Dec. 12, 2019) (notice of material injury determination).

### C.  The Current Litigation

     The court previously granted Plaintiffs leave to file a supplemental complaint but

deferred ruling on whether Plaintiffs' claims were moot.   Order, ECF No. 51.   Plaintiffs allege

that Commerce acted beyond its legal authority when Commerce: (1) terminated the 2013

Suspension Agreement, Compl. ¶¶ 41–46 (Count 1); (2) used May 7, 2019 as the preliminary

determination date in its continued investigation, <u>id.</u> ¶¶ 47–54 (Count 2); and (3) negotiated

---

[10] Section II.E of the 2019 Suspension Agreement identifies CAADES, AMHPAC, and three other entities as "a Mexican grower association whose members produce and/or export Fresh Tomatoes from Mexico and are also Signatories to this Agreement[.]"   <u>2019 Suspension Agreement</u>, 84 Fed. Reg. at 49,990.

revised terms in the 2019 Suspension Agreement, id. ¶¶ 55–58 (Count 3).  As relief, Plaintiffs

request, among other things, that the court (1) "[h]old that Commerce's unilateral expansion of

its statutory authority under Section VI.B of the 2013 Suspension Agreement is unlawful[]" and

(2) "[s]et aside Commerce's withdrawal from the 2013 [Suspension] Agreement and subsequent

agency actions, and reinstate the 2013 [Suspension] Agreement."  Id., Prayer for Relief ¶¶ A, B.

## II.    DISCUSSION

Article III of the Constitution limits federal courts to hearing actual, ongoing

controversies.  Davis v. FEC, 554 U.S. 724, 732 (2008).  An actual case or controversy must be

extant at all stages of review, not merely at the time the complaint is filed.  Id. at 732–33; see

DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (noting that the

Court is "presumed to be without jurisdiction unless the contrary appears affirmatively from the

record" (internal quotation marks and citations omitted)).  "Though justiciability has no precise

definition or scope, doctrines of standing, mootness, ripeness, and political question are within

its ambit."  Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005).

The party invoking jurisdiction bears the burden of establishing it.  Hutchinson Quality

Furniture, Inc. v. United States, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (internal quotation marks

and citation omitted).  A plaintiff must allege sufficient facts to state each claim alleged in the

complaint.  DaimlerChrysler Corp., 442 F.3d at 1318–19 (citing, inter alia, McNutt v. Gen.

Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  "If the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action."  USCIT R. 12(h)(3).

Defendant contends that Plaintiffs' claims alleged in the Complaint were rendered moot

when companies that comprise "Red Sun Farms," a named plaintiff in this action, signed the

2019 Suspension Agreement as members of AMHPAC.  Def. Br. at 15–17; Def. Reply at 5–6.[11]

Defendant also argues that the court is precluded from entertaining the claims because the court

cannot provide the relief requested in the form of reinstating the prior 2013 Suspension

Agreement.  Def. Br. at 15.

    Plaintiffs respond that the controversy remains live and the court can adjudicate the

claims because "all three counts in [the Complaint: Commerce's withdrawal from the 2013

Suspension Agreement, continuation of the antidumping duty investigation, and negotiation of

the 2019 Suspension Agreement] raise pure questions of law on undisputed facts," in that the

claims contest "the agency discretion of Commerce's actions."  Opp'n Br. at 1, 15.

    There is no "case or controversy" under Article III, and a suit becomes moot, "when the

issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

outcome."  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455

U.S. 478, 481 (1982) (per curiam)).  The mootness doctrine applies when "events have so

transpired that the [court's] decision will neither presently affect the parties' rights nor have a

more-than-speculative chance of affecting them in the future."  Clarke v. United States, 915 F.2d

699, 701 (D.C. Cir. 1990) (en banc) (citation omitted).

---

[11] Plaintiffs call Defendant's description of the apparent relationship among the entities comprising Plaintiffs as "grossly inadequate" and assert that "[n]one of the plaintiffs in this action are signatories to the 2019 Suspension Agreement . . . [and that] Plaintiffs to this action are separately-owned, privately-held legal entities who are related in a corporate context through investment and cross ownership."  Opp'n Br. at 3.  Yet, Commerce rejected Plaintiffs' request to be treated as a single exporter ("collapsed entity") comprised of various entities during the underlying "proceeding as an interested party standing in the shoes of an importer and domestic producer."  Id. at 4.  Nevertheless, Plaintiffs admit that they "participated in the underlying proceeding from the position of its U.S. interests. . . . [and] with Red Sun [Farm]'s affiliated Mexican producers and their interests[.]"  Id. at 15.

An action can avoid dismissal on mootness grounds if the claims asserted in the complaint are "capable of repetition, yet evading review." Spencer v. Kemna, 523 U.S. 1, 17 (1998); Torrington Co. v. United States, 44 F.3d 1572, 1577 (Fed. Cir. 1995) (citations omitted). "[T]he capable-of-repetition doctrine applies only in exceptional situations," when a plaintiff can show that "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Spencer, 523 U.S. at 17 (internal quotation marks and citations omitted); see Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d 568, 576 (D.C. Cir. 2010) ("The initial heavy burden of establishing mootness lies with the party asserting a case is moot," yet "the opposing party bears the burden of showing an exception applies[.]"). Supreme Court precedent recognizes that "inherently transitory" claims are capable of evading review. U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980); e.g., Davis, 554 U.S. at 735 (election law challenge); Neb. Press Ass'n v. Stuart, 427 U.S. 539, 542 (1976) (imposing prior restraints on speech); Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975) (pretrial detention conditions).

Here, Plaintiffs' response against mootness asserts that the claims raise pure questions of law and ignores the fact that the finalization of the 2019 Suspension Agreement rendered Plaintiffs' claims moot. Compl. ¶¶ 41–58; see Confederación de Ascociaciones Agrícolas del Estado de Sinaloa, A.C. v. United States, 44 CIT ___, ___, 2020 WL 3791640, at *6–8 (CIT July 7, 2020) (finding that the plaintiff Mexican tomato growers' claims, and relief requested, challenging Commerce's withdrawal from and termination of the 2013 Suspension Agreement, resumption of the underlying investigation, finalization of the 2019 Suspension Agreement, and the final determination, became moot when the Mexican tomato growers voluntarily signed the

2019 Suspension Agreement that superseded the 2013 Suspension Agreement).  Plaintiffs contest

Commerce's withdrawal from the 2013 Suspension Agreement, yet its affiliated entities and

companies within Plaintiff "Red Sun Farms" are members of AMHPAC—a signatory to the

2019 Suspension Agreement.  Plaintiffs admit that they represented themselves before

Commerce, together with "three supplier farms," Opp'n Br. at 4, as "an integrated North

American producer of fresh tomatoes in Mexico and in the United States, and as a U.S.

wholesaler of domestic like product as well as an importer of Mexican tomatoes," id. at 13.

Thus, Plaintiffs cannot ask this court to reinstate the 2013 Suspension Agreement when

companies doing business as Plaintiff "Red Sun Farms" signed the 2019 Suspension Agreement,

a new agreement that superseded the prior 2013 Suspension Agreement.  See also Pub. Utils.

Comm'n v. FERC, 236 F.3d 708, 714 (D.C. Cir. 2001) ("Ordinarily, it would seem readily

apparent that a challenge to an expired contract is moot, because the court could provide no relief

to the allegedly aggrieved parties.").

    As in CAADES, Plaintiffs here cannot seek to reinstate the 2013 Suspension Agreement

while at the same time enjoy the benefits of the 2019 Suspension Agreement that its otherwise

"integrated" companies signed as members of AMHPAC.  Further supporting the court's

conclusion that the claims are moot is the absence of precedent showing instances when the

Court has reinstated a prior suspension agreement that was either (1) superseded by a new

agreement or (2) entered after Commerce or the ITC made a final determination.[12]

---

[12] This case differs from this Court's decisions in CSC Sugar LLC v. United States, 43 CIT ___,
413 F. Supp. 3d 1318 (2019), and CSC Sugar LLC v. United States, 43 CIT ___, 413 F. Supp. 3d
1310 (2019).  In the CSC Sugar LLC cases, the Court vacated amendments to extant suspension
agreements, but did not restore the suspension agreement that was terminated and then
superseded by a new agreement agreed to by the parties.  413 F. Supp. 3d at 1326; 413 F. Supp.
3d at 1318.

Plaintiffs' current remedy may be to walk away from the 2019 Suspension Agreement, as the signatories are free to withdraw from that agreement for any reason, or for no reason at all, and without penalty, under a similar provision invoked three times before.  2019 Suspension Agreement, 84 Fed. Reg. at 49,994 ("An individual Signatory, or Signatories, collectively, or Commerce may withdraw from this Agreement upon 90 days' written notice to Commerce or the Signatories, respectively.").  In that event, Commerce will issue an antidumping order when the 2019 Suspension Agreement is terminated, but there is no logical scenario in which the court would reinstate the now-superseded 2013 Suspension Agreement.  See Nasatka v. Delta Sci. Corp., 58 F.3d 1578, 1580 (Fed. Cir. 1995) ("The test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" (citation omitted)).[13]  The court thus concludes that the claims alleged in the Complaint and relief sought from the court became moot when Plaintiffs' otherwise "integrated" companies signed the 2019 Suspension Agreement through membership in AMHPAC.[14]

---

[13] Plaintiffs did not carry their burden in advancing arguments as to whether the claims here represent an "exceptional situation" in which the challenged actions are "capable of repetition, yet evading review."  Spencer, 523 U.S. at 17.  The court thus need not opine on the applicability of a mootness exception beyond mentioning that this Court has rejected a plaintiff's argument that the "capable of repetition, yet evading review" exception applied as to a suspension agreement.  Am. Spring Wire Corp. v. United States, 6 CIT 122, 124 (1983) (finding exception to mootness inapplicable because "[s]uspension agreements . . . will generally be of long duration").

[14] Because Plaintiffs' claims are moot, the court need not discuss whether Plaintiffs' claims could have been brought under 28 U.S.C. § 1581(c) or whether Plaintiffs' claims should be dismissed for failure to state a claim under USCIT Rule 12(b)(6).

Court No. 19-00127                                                                                   Page 13

**III.     CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' motion to file a sur-reply is granted and Plaintiffs' Sur-Reply

is deemed filed; and it is further

**ORDERED** that Defendant's motion to dismiss is granted and Plaintiffs' Complaint is

dismissed with prejudice.  Judgment will enter accordingly.

                                              /s/ Jennifer Choe-Groves
                                            Jennifer Choe-Groves, Judge


Dated:  September 11, 2020
            New York, New York